**Aundes F. COLLINS**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.***

Civ. A. No. 74-229-A and Nos. 74-239, 74-248, 74-290, 750031, 74-329, 74-330, 74-241, 74-236, 75-261, 74-304, 74-360, 750029 and 750043.

United States District Court,
W. D. Virginia,
Abingdon Division.

Aug. 12, 1975.

---

* Consolidated with:
Sidney G. Adams, 74-238; Lacy C. Hopkins, 74-239; Frankie Gullett, 74-248; James G. Sturgill, 74-290; Ernest Mabe, 750031; James C. Talley, 74-329; Otis R. Taylor, 74-330; Herchel F. Sullivan, 74-241; James G. Bryson, 74-236; Clyde Scott, 74-261; Dudley M. Owens, 74-304; Coy C. Barnette, 74-360; Robert M. Miller, 750029; and Clyde E. Hamilton, 750043.

S. Strother Smith, III, Smith, Robinson & Vinyard, Abingdon, Va., for plaintiff.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for defendant.

OPINION and ORDER

TURK, Chief Judge.

These cases are before the court to review the final decision of the Secretary of Health, Education and Welfare denying plaintiffs' claims for "black lung" benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq*. The question of law in each is identical and one of first impression; accordingly, they have been consolidated for the purpose of this opinion.

The Secretary of Health, Education and Welfare denied benefits in each case because the plaintiffs did not establish

total disability due to pneumoconiosis prior to July 1, 1973, the date he contends *all* jurisdiction of black lung claims shifted from Health, Education and Welfare to the Department of Labor.

In the first group of cases [1], the Secretary denied benefits to miners who offered to introduce medical evidence of lung dysfunction [2], but who continued to work at their usual coal mine jobs past June 30, 1973.[3] In the second group of cases,[4] the Secretary refused to consider positive medical evidence obtained after June 30, 1973, on the grounds that it was irrelevant to the determination of the miner's medical condition as of June 30, 1973. This court affirms the Secretary's decision in the first group but remands the second group to the Secretary for further consideration.

Under the Federal Coal Mine Health and Safety Act of 1969, as amended, Congress has attempted to fill a gap in traditional state workmen's compensation coverage as it relates to coal miners. In the past, few states have provided benefits for death or disability due to pneumoconiosis. Recognizing this inequity, Congress has established a temporary federal program to compensate disabled miners and their widows with the ultimate goal being to place responsibility for payment of black lung benefits (through the workmen's compensation mechanism) upon operators of coal mines in which the miner who contracted pneumoconiosis was employed.

Part B of the Act establishes this temporary program and is administered by the Secretary of Health, Education and Welfare. In general, benefits are

1.

| PLAINTIFF | CIVIL ACTION NO. | DATE CLAIMANT CEASED WORK |
|---|---|---|
| Aundes F. Collins | 74–229 | Still Working |
| Sidney G. Adams | 74–238 | April 20, 1974 |
| Lacy C. Hopkins | 74–239 | July 27, 1973 |
| Frankie Gullett | 74–248 | Sept. 6, 1973 |
| James G. Sturgill | 74–290 | Aug. 31, 1973 |
| Ernest Mabe | 750031 | Nov. 8, 1973 |
| James C. Talley | 74–329 | Oct. 1973 |
| Otis R. Taylor | 74–330 | Dec. 31, 1973 |

2. *See* 20 C.F.R. § 410.401 *et seq.*

3. The Secretary contends that as of the date jurisdiction shifted to Labor (July 1, 1973) these men were not disabled within the meaning of the Act because they were still working. *See* 20 C.F.R. §§ 410.412, 410.-424(a), 410.490(c).

4.

| PLAINTIFF | CIVIL ACTION NO. | MEDICAL EVIDENCE SUBSEQUENT TO 6/30/73 |
|---|---|---|
| Herchel F. Sullivan | 74–221 | x-rays 1/1 p, 1/1 p – Qualifying Pul. Fct. St. |
| James G. Bryson | 74–236 | x-rays 1/1 p, 1/1 p – Qualifying Pul. Fct. St. |
| Clyde Scott | 74–261 | x-ray 1/1 p, 1/1 p – Qualifying Pul. Fct. St. |
| Dudley M. Owens | 74–304 | x-ray 1/1 q |
| Coy G. Barnette | 74–360 | x-rays 1/1 p, 1/1 p – Qualifying Blood Gas Study |
| Robert M. Miller | 750029 | Qualifying Blood Gas Study |
| Clyde E. Hamilton | 750043 | x-ray 1/1 p, 1/0 p |

payable to living miners who are totally disabled due to pneumoconiosis arising out of coal mine employment and to the surviving dependents of a miner who was receiving benefits at the time of his death or whose death was due to such disease, or who was totally disabled due to pneumoconiosis at the time of his death. But Part B is only an interim program which gives way to Part C. Part C is administered by the Secretary of Labor and provides for the payment of claims *filed* after June 30, 1973, for living miners, and after December 31, 1973, for others. Under Part C, claims are filed pursuant to applicable state workmen's compensation laws certified by the Secretary of Labor to provide adequate black lung coverage equivalent to the federal law. During any period after December 31, 1973, in any state where no adequate state workmen's compensation laws exist, the Secretary of Labor administers Part C in accordance with the provisions of the Longshoremen's and Harbor Workers' Compensation Act. In any state where such a situation exists, Part C requires the mine operators to pay directly the black lung benefits.

■ Specifically with regards to which Department has jurisdiction over these claims, § 415 of the Amended Act provides that any claim for benefits filed during the period from July 1, 1973, to December 31, 1973, shall be under the jurisdiction of the Secretary of Labor.[5] (Section 414(a) covers the period after December 31, 1973 [Part C].) The Act, therefore, limits HEW's (Social Security's) responsibility to paying claims *filed* prior to July 1, 1973.

All of the plaintiffs in these actions *filed* their applications for benefits prior to July 1, 1973, but this does not end the court's inquiry into the jurisdiction question, because under the applicable black lung regulations a claim is not considered *filed* until it has been *effectively filed*. Black Lung Regulations, 20 C.F.R. § 410.226(b), provides that:

"A claim which is filed before the claimant meets all the requirements for entitlement to such benefits will be deemed a valid claim if the claimant meets such requirements of entitlement (1) before the Administration makes a final decision on such claim or (2) if the claimant has timely requested judicial review of such final decision before such review is completed. If the claimant first meets the requirements for entitlement for benefits in a *month after* the *month* of *actual filing*, but before a final administrative or judicial decision is rendered on his claim, *his claim will be deemed to have been effectively filed in such first month of entitlement*." (emphasis added)

Thus, if a plaintiff who has filed an application with the Secretary of HEW under Part B prior to July 1, 1973, first becomes disabled after June 30, 1973, his application will be deemed to have been filed in the month he first becomes disabled, and since his application was *filed* after June 30, 1973, he is not eligible for benefits under Part B by virtue of § 415(a). He did not meet the requirements for entitlement while HEW had jurisdiction over his case. Of course, he may refile his claim with the Department of Labor.

■ Subpart D, 20 C.F.R. § 410.-401 *et seq.* of the Black Lung Regulations establishes the standards for determining total disability due to pneumoconiosis including the statutory presump-

---

5. Section 415(a)(1) of the Act provides:

Notwithstanding any other provision in this title, for the purpose of assuming the uninterrupted receipt of benefits by claimants at such time as the responsibility for the administration of the benefits program is assumed by either a State Workmen's Compensation Agency or the Secretary of Labor, any claim for benefits under this part filed during the period from July 1, 1973 to December 31, 1973, shall be considered and determined in accordance with the procedures of this section. With respect to any such claim—

(1) Such claim shall be determined, . . . by the Secretary of Labor.
. . .

tion of total disability. *See* §§ 410.414, 410.490. But total disability is not established and these presumptions are rebutted if there is evidence that the miner is doing his usual coal mine work or other comparable work. §§ 410.412, 410.490. Regular work activity after June 30, 1973, thus precludes any finding of total disability due to pneumoconiosis prior to July 1, 1973.[6] Even if the medical criteria are met, the miner's claim will not be deemed to have been effectively filed until he actually quits his coal mining work. Accordingly, the first category of cases where the miners continued their regular work activities past June 30, 1973, the holdings of the Secretary in denying benefits are affirmed[7], and these cases are accordingly dismissed and stricken from the docket of the court, and it is so ordered.

 In the second group of cases, where the claimants had ceased their employment prior to the cut-off date, the Secretary also denied benefits because they failed to establish total disability due to pneumoconiosis prior to July 1, 1973. But in so denying these claims, the Secretary refused to consider medical evidence showing the existence of pneumoconiosis subsequent to June 30, 1973. The Secretary concluded that medical evidence showing the disease at some time after that date was irrelevant to the determination of whether the miner had the disease as of the cut-off date.

By way of deposition, Dr. William F. Schmidt, a noted authority in the black lung field, testified that the detection of pneumoconiosis is a difficult procedure and that x-rays and other tests are subject to differing interpretations. He stated that the disease grows very slowly and furthermore, that it would be logical to assume that recent positive evidence of pneumoconiosis would mean

that the miner has had the disease for at least two years. In short, he considers later positive evidence highly relevant to the question of whether the miner had the disease on a prior date.

Since pneumoconiosis does not just suddenly appear, but is of a slow and progressive nature, the court holds that later medical evidence is pertinent to the inquiry, and that therefore, such medical evidence may relate back to a time prior to July 1, 1973. Accordingly, the cases of the second category[8] are remanded to the Secretary for further consideration, and it is so ordered.

---

6. However, where the miner's health was very poor and the work activity after June 30, 1973, was so sporadic as not to amount to gainful activity or of such a variety as to indicate a "make shift" job provided by a benevolent mine operator, further inquiry may be necessary.

7. Note 1 *supra.*

8. Note 4 *supra.*