Mrs. Anna **LISEFSKI**

v.

Caspar **WEINBERGER,** Secretary of **Health, Education and Welfare.**

**Civ. A. No. 74–3332.**

United States District Court,
E. D. Pennsylvania.

Nov. 10, 1975.

Anthony J. Miernicki, Shenandoah, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

GORBEY, District Judge.

This is a suit to review the final decision of the Secretary of Health, Education and Welfare, which had denied the plaintiff's claim as the widow of a miner for "black lung" benefits pursuant to §§ 411(a) and 412(a)(2) of the Act, 30 U. S.C.A. § 921(a) and § 922(a)(2). The court has jurisdiction exclusively pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) as incorporated by reference through § 413(b) of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 923(b).

Section 205(g) provides, *inter alia,* that:

> "As part of his answer, the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."

And that:

> "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of .the Secretary, with or without remanding the case for a rehearing."

It further provides that:

> "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ."."

The record shows that plaintiff filed a protective application on January 18, 1970, and a formal application on July 8, 1970 for widow's benefits under the Federal Coal Mine Health and Safety Act of 1969. (Tr. 50–54) On December 31, 1970, the application was denied, and subsequently, after consideration, the Bureau of Disability Insurance of the Social Security Administration again denied the application. Following the amendment of the Act in May, 1972, the Bureau of Disability Insurance reviewed the case in accordance with the Act as amended. On August 7, 1973, after a review of all the evidence, the Bureau again denied the application. (Tr. 60–62) Following this denial, plaintiff requested a hearing on August 18, 1973. The hearing was held before the Administrative Law Judge on August 19, 1974, at which time the case was considered *de novo*, with the plaintiff and her attorney present. The plaintiff was the sole witness and her testimony appears in the transcript at pages 20 to 43, inclusive. The other evidence in the case is found in Exhibits 1 through 18 of the Administrative Record. On August 30, 1974, the Administrative Law Judge found that the plaintiff was not entitled to benefits under the Act, as amended, and this became the final decision of the Secretary when the Appeals Council approved it on November 12, 1974.

The only issue before the court is whether the final decision of the Secretary is supported by substantial evidence. The deceased miner was born March 13, 1929, and he died on February 21, 1956. The marriage of the deceased miner and the plaintiff occurred on July 2, 1950. Her testimony, along with the decedent's tax and Social Security records establish that her husband had been employed in the anthracite coal stripping industry for approximately eight years. (Tr. 24–28, 36–37, 65–78) While the plaintiff testified that her husband had driven a truck around the mines beginning at age sixteen which would be after March 13, 1945, such testimony was not supported by the exhibits which indicate that the first earnings of the deceased were in the year of 1947; this would indicate a work period of no more than eight years. Thus, the exhibits support the finding of the Administrative Law Judge that the deceased miner was employed in excess of five years in the nation's coal mines.

■ With this factual situation, it is clearly shown in pages 5 to 9 in the brief in support of defendant's motion for summary judgment, plaintiff cannot invoke the presumptions afforded by 20 C.F.R. 410.456 and 20 C.F.R. 410.462. Accordingly, the burden was upon the plaintiff to prove that her husband was totally disabled due to pneumoconiosis at the time of his death.

A search of the record indicates that the only evidence in support of the claim that the miner had pneumoconiosis or any other respiratory ailment is that of the plaintiff herself. There is no x-ray, biopsy, or autopsy evidence, no results of other medical tests, no evidence of co-workers, friends or neighbors or physicians who might have had knowledge of his physical condition. None of the doctors who are alleged to have treated the deceased were living at the time of the hearing, although Dr. Moyer, who plaintiff testified had been treating her husband for asthma, was still living on June 27, 1973. (Tr. 81–82). Neither the hospital reports nor the death certificate refer to the alleged breathing difficulties. The decedent's medical report indicates that he had entered Locust Mountain Hospital complaining of severe abdominal pains. (Tr. 87) The death certificate as indicated by Exhibit No. 18 lists "acute hemorrhagic pancreatitis" as the direct cause of death.

In Exhibit No. 13, Statement of Claimant or Other Person, plaintiff stated with respect to the question "What were the circumstances surrounding his death?", the response, "he had an extremely hard time getting his breath and had to be taken to the hospital". That statement is certainly not consistent with the decedent's medical report

which indicated that he had entered the hospital complaining of severe abdominal pains. Plaintiff testified that her husband had such shortness of breath that he could not walk a single block without stopping and resting, that he was unable to climb stairs, and when he was so short of breath, he had to use a bronchodiltor, which gave him some relief. Although she had testified that a Dr. Pulaski had told her husband to get out of the mines because of his condition, and that the mine would kill him, she further testified that she had never had any conversations of any kind with Dr. Pulaski concerning her husband's condition. (Tr. 33, 37, 42) In such a situation, one would normally expect that either the plaintiff or her husband, or both, would have communicated to the hospital authorities or the admitting doctor their belief that in addition to the acute condition, whatever it may have been, that her husband had black lung disease. Had this been done, it is likely that x-rays would have been taken and following his death an autopsy would have been performed. But even without the communication of such belief, if his breathing condition was as serious as indicated by the plaintiff in her testimony, "he couldn't sleep at night unless he was in an upright position", surely such fact would have been noted after admission to the hospital and some record thereof would have been made. (Tr. 31–33)

Thus, it becomes very obvious that there is a conflict in the evidence. The question is raised as to the credibility of the witness with respect to the decedent's shortness of breath, and the possible cause thereof; the plaintiff's admission that the decedent smoked three packs of cigarettes a day from the time of his youth until two years prior to his death becomes significant. (Tr. 38)

A review of the entire record requires the conclusion that the findings of the Secretary are supported by substantial evidence, substantial evidence being such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Baker v. Weinberger,* 383 F.Supp. 1095 (W. D.Va.1974).

Having reached such conclusion, it is not necessary to discuss the issue of total disability. However, plaintiff's assertion that her husband could not work steadily because of his breathing problems (Tr. 80) is inconsistent with her testimony that the sporadic nature of his employment, as indicated by his Social Security record, was due to periodic mine closings and location changes which accounted for the frequent intervals of unemployment between jobs. (Tr. 37, 65–78) It follows therefore that the Secretary's decision in denying benefits is supported by substantial evidence on the record and therefore must be affirmed.

## ORDER

And now, this 10th day of November, 1975, upon consideration of defendant's motion for summary judgment, the memoranda in support of and in opposition thereto and for the reasons given in the accompanying Memorandum, it is hereby ordered that the motion for summary judgment filed on behalf of the defendant is hereby granted and judgment is entered for the defendant and against the plaintiff.