Peter **PETROCK**

v.

Joseph **CALIFANO,** Secretary of Health, Education and Welfare.

Civ. A. No. 77–424.

United States District Court, E. D. Pennsylvania.

Oct. 31, 1977.

Joseph M. A. Nelabovige, Hamburg, Pa., for plaintiff.

Jeffrey Simcox, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

In this black lung case, plaintiff seeks review of the final decision of the Secretary of the Department of Health, Education and Welfare that the plaintiff, Peter Petrock, is not entitled to benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, *as amended*, Black Lung Benefits Act of 1972, 30 U.S.C.A. § 901 *et seq.* (Supp.1977). Both plaintiff and defendant have filed motions for summary judgment. As this Court finds that there is not substantial evidence to support the administrative determination of non-eligibility, plaintiff's motion for summary judgment will be granted.

Plaintiff filed an application for black lung benefits on April 27, 1973. The Bureau of Disability Insurance of the Social Security Administration denied the application both initially and on reconsideration. Plaintiff, on June 16, 1974, filed a request for a hearing; hearings were held on June 17, 1975 and on September 24, 1975. On December 24, 1975, the Administrative Law Judge (ALJ) found that the plaintiff was not entitled to benefits under the Act. Af-

ter review of additional medical evidence, the decision of the ALJ was adopted as the final decision of the Secretary when the Appeals Council approved it on December 6, 1976.

■ The issue before this Court is whether the decision of the Secretary is supported by substantial evidence, for if it is this Court must allow the Secretary's determination to stand. 30 U.S.C.A. § 923(b) (Supp.1977), incorporating by reference 42 U.S.C. § 405(g), (h) (1970). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lisefski v. Weinberger*, 403 F.Supp. 1364 (E.D.Pa.1975). The Black Lung Benefits Act and the regulations promulgated thereunder establish several avenues by which the plaintiff can establish his claim; in order to affirm the Secretary's denial of benefits, this Court must find that the Secretary's closing off of each avenue is supported by substantial evidence.

■ Coal miners who are totally disabled due to pneumoconiosis are entitled to benefits under the Black Lung Benefits Act. A miner is entitled to benefits if he or she can satisfy the interim criteria contained in 20 C.F.R. § 410.490 (1976) or the permanent criteria contained in 20 C.F.R. §§ 410.-412–.462 (1976).

■ Under the interim criteria, if a miner files a claim for benefits before July 1, 1973, and a chest X-ray or biopsy establishes pneumoconiosis, or ventilatory studies show the existence of a chronic respiratory or pulmonary disease, the miner is rebuttably presumed to be totally disabled due to pneumoconiosis and therefore, in the absence of sufficient contradictory evidence, eligible for benefits. The Secretary found that the plaintiff did not satisfy the requirements of the interim regulations and this Court finds that there is substantial evidence to support that determination. Although several chest X-rays were taken of the plaintiff, only one X-ray taken prior to 1973 was read as positive and it was reread by NIOSH certified readers as completely negative. The overwhelming negative chest X-ray evidence allows this Court to find that there was substantial evidence to support the determination that the X-ray evidence did not establish pneumoconiosis. No biopsy evidence was introduced into the record. While the plaintiff underwent a ventilatory test, the ALJ found that he could not use the results from the test to make his determination under the interim regulations. Because 20 C.F.R. § 410.430 (1976) requires that the ventilatory study must show the results of three appropriately labelled spirometer tracings and the plaintiff's study fails to do so, the ALJ found that the results could not be deemed to conclusively establish the existence of a respiratory or pulmonary disease. As these studies do not meet the requirements of 20 C.F.R. § 410.430 (1976) there was substantial evidence for the Secretary's holding that the interim criteria were not met by the plaintiff.

■ Turning to the permanent criteria for establishing a claim under the Black Lung Benefits Act, there are various routes a claimant can take to establish a claim under the relevant regulations. First, under 20 C.F.R. § 410.418 (1976) an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis arises when evidence establishes that the miner has complicated pneumoconiosis; the ALJ found that the X-ray reports and the medical evidence did not demonstrate that the plaintiff suffered from complicated pneumoconiosis. In order to be entitled to 20 C.F.R. § 410.418's irrebuttable presumption of total disability, X-ray evidence, biopsy or other medical evidence indicating complicated pneumoconiosis must be introduced; as no such evidence was admitted, there is substantial evidence to support the finding of no complicated pneumoconiosis.

■ A second avenue for proving a disability claim under the permanent regulations is 20 C.F.R. § 410.414(a) (1976). This section allows for a finding of pneumoconiosis to be made if a chest X-ray, biopsy or autopsy indicates the presence of the disease. However, for the reasons stated in

reference to the denial of plaintiff's claim under the interim regulations, this Court holds that there is substantial evidence to support the Secretary's decision that the plaintiff's claim could not be processed under this section.

Two other sections of the regulations provide means by which the plaintiff could establish his claim. The regulations provide in 20 C.F.R. § 410.414 (1976) that even though a miner does not establish a claim pursuant to 20 C.F.R. § 410.414(a) (1976) it is still possible, by fulfilling either the requirements of 20 C.F.R. § 410.414(b) or (c) (1976) that he or she may be entitled to benefits under the Black Lung Benefits Act. The ALJ rendered a finding only as to 20 C.F.R. § 410.414(c); as this Court finds that there is not substantial evidence to support the ALJ's and Secretary's denial of benefits under 20 C.F.R. § 410.414(c), it will not be necessary to decide whether the plaintiff makes out a claim under 20 C.F.R. § 410.414(b).

20 C.F.R. § 410.414(c) provides that:

Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term "other relevant evidence" includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition and other supportive materials. In any event, no claim for benefits under Part B of Title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray).

While the ALJ concluded that the evidence as a "whole fail[ed] to establish that the claimant [had] a respiratory or pulmonary impairment of the level of severity as to be totally disabling," (T.R. 34), the ALJ found the primary problem with the evidence to be its failure to show a pulmonary or respiratory impairment and not that it did not indicate that the plaintiff was totally disabled. The ALJ's finding that the plaintiff did not establish that he suffered from a respiratory or pulmonary impairment was based on the report of a physical examination conducted by one doctor and the negative X-rays of the plaintiff's chest; the Secretary adopted the ALJ's findings. However, this Court holds that the evidence relied upon by the ALJ is insufficient, in light of the contradictory evidence, to support a finding that there was substantial evidence to support the administrative decision.

■ The ALJ stated, in his decision, that Generally, the symptoms of impaired lung function may include difficulty breathing or shortness of breath, fatigue, a chronic cough or chest pains, physical signs such a rales, distant breath sounds, a barrel chest, increased AP diameter of the chest, cyanosis and clubbing may also be found." (T.R. 33)

From the administrative record, it is apparent that there was not substantial evidence to state that the plaintiff did not suffer from these symptoms; to the contrary, the overwhelming evidence establishes that the plaintiff daily was plagued by an impaired lung function. The plaintiff testified that he found it hard to breathe and that he could not get enough air; he said that he was often short winded and dizzy. Dr. Fetter, the plaintiff's personal physician, testified that the plaintiff complained of shortness of breath and that he had treated the plaintiff for this problem once or twice a month since 1969. In addition, Dr. Fetter stated that the plaintiff suffered from anthracosilicosis, a form of black lung disease, which was a result of the plaintiff's having worked in the coal mines. The ALJ discredited Dr. Fetter's testimony on the grounds that the doctor's diagnosis was

based upon positive readings of X-rays which upon re-reading were interpreted as being negative. Although Dr. Fetter did testify that his diagnosis was verified by this X-ray, he stated that his findings were based upon his repeated examinations of the plaintiff; the ALJ failed to take this fact into account when reviewing the worth of Dr. Fetter's opinion, and accorded the negative X-ray evidence the utmost significance. Dr. David C. Zonies, doctor of internal medicine, examined the plaintiff on July 26, 1972; upon physical examination he found that the plaintiff had shortness of breath, weakness and fatigue; he also discovered, during the physical examination, that the chest showed bilateral rales, greater at the right base than at the left, and that there was some dullness at the right base. Again, the ALJ discounted the worth of this doctor's findings, because subsequent X-rays, ordered by Dr. Zonies, were negative. While the ventilatory studies performed on the plaintiff could not be the sole basis for a finding of pneumoconiosis under the interim or permanent regulations as they failed to be expressed in three appropriately labelled spirometer tracings, it should be noted that the studies did indicate that the plaintiff had pneumoconiosis. Furthermore, upon examination of the plaintiff on July 16, 1976, Dr. Carl Ervin found that the plaintiff suffered from pneumoconiosis which dated back fifteen to twenty years. He found that the shortness of breath and wheezing which the plaintiff suffered from were typical of the disease. The doctor also reported that he had a chest X-ray taken of the plaintiff and that the results were positive. While Dr. Ervin's report was submitted after the ALJ rendered his decision, the report was admitted into the record and considered by the Secretary in adopting the ALJ's opinion as the final decision. And although Dr. Ervin examined the plaintiff subsequent to June 30, 1973, the time when the plaintiff claimed that he had the disease and also the jurisdictional cut-off date under the Black Lung Act, this evidence should have been considered by the Secretary in making his determination. In *Collins v. Weinberger*, 401 F.Supp. 377 (W.D. Va.1975), the Secretary refused to consider medical evidence showing the existence of the claimant's pneumoconiosis subsequent to the jurisdictional cut-off date since he concluded that such evidence was irrelevant to the determination of whether the miner had the disease as of the cut-off date. In that case, an expert witness testified that the disease grows slowly and that recent positive evidence of pneumoconiosis would mean that the miner had the disease for at least two years. Reversing the Secretary's decision, the Court found that

> Since pneumoconiosis does not just suddenly appear, but is of a slow and progressive nature, the court holds that later medical evidence is pertinent to the inquiry, and that therefore, such medical evidence may relate back to a time prior to July 1, 1973. *Id.* at 381.

Despite all the positive evidence of a lung impairment that was presented, the ALJ and the Secretary held that the plaintiff did not establish that he had a pulmonary or respiratory impairment. The negative chest X-rays were the primary reason given in support of the administrative decision. However, 20 C.F.R. § 410.414(c) cautions that no claim for benefits should be denied solely on the basis of negative chest X-rays. While this is not the sole reason given for the ALJ's decision, negative chest X-rays appear to be the significant factor in the administrative determination. Dr. Ervin explained that while a chest X-ray may be negative, it is still possible for the patient to be suffering from pneumoconiosis; the disease, especially in its early stages, is not always apparent in the X-ray. Presumably, this is the reason why the regulations do not permit a denial of benefits to be based solely on negative chest X-ray evidence. Thus, this Court finds that given substantial contradictory relevant evidence, as defined in 20 C.F.R. § 410.414(c), the negative chest X-ray evidence alone does not support the Secretary's denial of benefits.

But the ALJ's opinion indicates that there was another reason for denying the plaintiff benefits. A Dr. Marshall reports

that from a physical examination he made of the plaintiff on August 17, 1972, the plaintiff's chest was determined to be symmetrical, with equal expansion, normal resonance and no rales and furthermore, that the plaintiff's breath and voice sounds were normal. This report appears to indicate that the plaintiff did not suffer from pneumoconiosis. Although, besides the negative chest X-ray, it is only Dr. Marshall's opinion upon which the ALJ relies to support his decision, there is no indication in the record of Dr. Marshall's field of specialty or professional qualifications. Additionally, the ALJ gave no reason for why he gave greater weight to the opinion of Dr. Marshall than to the opinions of all the other doctors who examined the plaintiff. Perhaps, more importantly it should be recognized that it appears that Dr. Marshall examined the plaintiff when he came to the hospital complaining of stomach pains; it would seem then that the doctor's interest in the plaintiff, although he cursorily might have examined the plaintiff's chest, was in the plaintiff's stomach. The ALJ did not have the opportunity to question Dr. Marshall as to the basis for this opinion, as the doctor did not testify at the hearing; however, the ALJ accepted this doctor's opinion as the truth, in light of all the contradictory evidence. Given all these facts, this Court finds that there was not such relevant evidence admitted to the record as a reasonable person might accept as adequate to support the conclusion that plaintiff did not suffer from a respiratory impairment.

▇▇▇ Besides suffering from a respiratory impairment, to be entitled to benefits the plaintiff must establish under 20 C.F.R. § 410.414(c) that the respiratory impairment arose from his work in the coal mines and that it totally disabled him. Under the Black Lung Benefits Act of 1972, if a miner is employed for more than ten years in the coal mines, there shall be a rebuttable presumption that his pneumoconiosis arose from his work in the coal mines. 30 U.S.C.A. § 921(c) (Supp.1977). The ALJ found that the plaintiff was employed for at least ten years in the coal mines and therefore, as there is no evidence to rebut the pre-

sumption, it will be presumed that the plaintiff's lung impairment arose from his work in the nation's coal mines. To be found totally disabled by reason of the lung impairment, his pneumoconiosis must prevent him from "engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time" and his impairment must be expected to last for twelve months. 20 C.F.R. § 410.412 (1976). Doctors Fetter and Ervin reported that the plaintiff's shortness of breath and fatigue-symptoms of his lung impairment-permanently prevents him from engaging in any work. Although the plaintiff has also suffered from other illnesses, including carcinoma of the bowel, these doctors submit that the plaintiff's total inability to work is caused by his lung disease. While the decision of another governmental agency as to total disability is not determinative of the issue, 20 C.F.R. § 410.470 (1976), it should be noted that plaintiff was found totally disabled due to black lung disease under the Pennsylvania Occupational Disease Act. In light of this evidence, and lack of contradictory evidence, this Court finds that there is not substantial evidence to support the Secretary's decision that the plaintiff is not totally disabled due to pneumoconiosis.

Therefore, in the absence of some acceptable explanation for the Secretary's rejection of all evidence favorable to the plaintiff and his complete reliance on rather inconclusive unfavorable evidence, this Court is compelled to grant summary judgment in the plaintiff's favor. If the defendant believes that it could produce substantial evidence to support denial of the plaintiff's claim on remand, it may file an appropriate motion.