**Sallie ANDERSON**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.**

**Civ. No. 3–77–31.**

United States District Court, E. D. Tennessee, N. D.

Oct. 27, 1977.

---

Robert J. English, Knoxville, Tenn., for plaintiff.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff, the sixty-five-year-old widow of a deceased former coal miner, filed this action to review the decision of the Secretary of Health, Education and Welfare (the Secretary) denying her claim on behalf of her husband for disability benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended (the Act), 30 U.S.C. § 901 *et seq.* Plaintiff and the Secretary have filed motions for summary judgment with accompanying memoranda of law. Both sides have filed supplemental memoranda concerning the applicability of relevant Sixth Circuit cases to the facts herein.

The jurisdiction of this Court is invoked pursuant to Section 413(b) of the Act, 30 U.S.C. § 923(b), which incorporates the judicial review provisions of the Social Security Act, 42 U.S.C. §§ 405(g) and (h). Under these provisions, the factual determinations of the Secretary are conclusive, if supported by substantial evidence found in the transcript of the administrative record.

In November of 1970, James Anderson filed a claim for disability benefits under the Act, claiming a disability due to a lung disease resulting from coal mine employment. In his original application, Anderson claimed twenty-eight years of coal mine employment and stated that he had only a third grade education. (Tr. 88–91). His application was denied initially on January 6, 1971 by the Bureau of Disability Insurance of the Department of Health, Education and Welfare. His claim was reevaluated, pursuant to the 1972 Amendments to the Act, and was again denied, effective July 25, 1973. (Tr. 95–97).

On February 2, 1974, Anderson filed a written request for a hearing, in order to challenge the administrative denials of his claim. (Tr. 48). On September 15, 1974, James Anderson died, at the age of sixty-seven. Five days later his widow, the plaintiff, Sallie Anderson, filed the present claim on behalf of her deceased husband. (Tr. 177).

The plaintiff and her daughter and son testified at the *de novo* hearing held on May 12, 1975. (Tr. 49–87). The Hearing Examiner granted benefits, effective from June 30, 1973, in a written decision dated June 26, 1975. (Tr. 41–46).

On August 14, 1975, Mildred Clodgio (the plaintiff's daughter), acting as plaintiff's representative, filed a request for a review of the Hearing Examiner's decision. (Tr. 36). She attached to the request a three-page letter detailing the errors she felt the Hearing Examiner had made. The plaintiff contended that the evidence required an earlier date of disability, *i. e.,* November 1970.

On November 25, 1975, the Appeals Council granted the request for review (Tr. 35), and on March 30, 1976, sent to the plaintiff copies of additional evidence which had been received into the record on appeal. (Tr. 228).

The Appeals Council reversed the Hearing Examiner and denied benefits on November 23, 1976. This determination became the final decision of the Secretary on plaintiff's claim and is challenged in this Court under the review provisions of 42 U.S.C. § 405(g) and (h).

In order to establish eligibility for benefits, the plaintiff must establish that her husband was disabled due to pneumoconiosis prior to July 1, 1973. *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976).

In enacting the 1972 amendments to the Act, Congress mandated that the Secretary adopt such interim rules and criteria as would permit prompt processing of the large backlog of claims. Pursuant to that mandate, the Secretary promulgated the interim criteria found at 20 C.F.R. § 410.490, which includes a presumption that a miner was totally disabled due to pneumoconiosis if a chest roentgenogram (X-ray) establishes the existance of pneumoconiosis.

The criteria for chest X-rays which demonstrate pneumoconiosis are delineated in 20 C.F.R. § 410.428. There are four different chest X-rays of the deceased miner in this record. The first two chest X-rays were taken prior to the July 1, 1973 cut-off date. Dr. Dukes read the first X-ray dated December 11, 1970, as negative. (Tr. 151). The second X-ray, dated March 6, 1973 (four months before the cut-off date) was read by three physicians (although one of the three is unnamed) as negative. (Tr. 27, 161, 226).

The final two X-rays were taken after the cut-off date and are relevant only to the extent that they tend to demonstrate pneumoconiosis prior to that date. An X-ray dated April 13, 1974 (nine months after the cut-off date) was read by four physicians. Because of the importance of this particular X-ray, the findings of the physicians will be presented in some detail.

The record does not contain the original interpretation, assuming that one was given at or about the time the X-ray was taken. The first reading of the X-ray in this record occurred on April 28, 1975. Dr. Eugene Pendergrass, a specialist in radiology with approximately fifty years of experience (Tr. 222), noted the following categories in his interpretation of the X-ray film after marking the quality of the film as good: small opacities with a combined profusion of "½" in all six lung zones and large opacities of type size "A," type "WD." (Tr. 215). This is a positive reading for pneumoconiosis, and the large opacities would meet the requirement for "complicated pneumoconiosis."

Doctor Virgil Plessinger, a Cincinnati internist specializing in pulmonary diseases with forty years' experience, read this same X-ray film as positive for pneumoconiosis. In an interpretation report dated May 8, 1975, Dr. Plessinger also found "complicated" pneumoconiosis of category "A", as well as simple pneumoconiosis, profusion of "½". (Tr. 187). In addition, Dr. Plessinger added this comment at the end of the report:

"There should be no question about the presence of nodulations suggestive of pneumoconiosis. There would be room for disagreement as to the degree of involvement by pneumoconiosis."

(Tr. 187).

Based on these X-ray interpretations the Hearing Examiner granted benefits. However, the Appeals Council submitted the 1973 X-ray, along with the one discussed above and one dated three days later, to another physician for a serial reading.

Doctor Harold Spitz, a contract film reader for the Social Security Administration and a radiologist (diplomate of the American Board of Radiology) with twenty years' experience, read April 13, 1974 film as negative for pneumoconiosis.

The plaintiff then obtained a serial reading of these three X-rays. On May 24, 1976, Dr. Elmer Engelman, an internist and diplomate of the American Board of Internal Medicine, with forty years' experience, read the three X-rays serially. In particular, he found the April 13, 1974 X-ray to be of acceptable quality and revealing a positive reading for simple pneumoconiosis, category "P, ½." Drs. Engelman and Spitz were in disagreement as to the 1973 X-ray also,

with Dr. Engelman interpreting that film as positive "P, ½" simple pneumoconiosis and Dr. Spitz interpreting the same film as negative. The final X-ray film, dated April 16, 1974, was interpreted as unreadable by all the physicians who read it, except Dr. Fox. (Tr. 29, 164, 168, 224). Because of its poor quality this film would be of little relevance to plaintiff's claim.

The Court notes that at the time this claim was considered by the Hearing Examiner, the crucial X-ray of April 13, 1974, had been interpreted as positive for pneumoconiosis by both of the physicians who had read it. Not only had these two physicians found the film to demonstrate "simple" pneumoconiosis, but these two highly qualified physicians also found evidence of "complicated" pneumoconiosis, category "A." (Tr. 187, 215). Plaintiff argues before this Court, as she did before the Appeals Council, that uncontradicted findings of complicated pneumoconiosis by the only two physicians who had read that X-ray entitled her husband to the irrebuttable presumption found at 20 C.F.R. § 410.418, and thus the Hearing Examiner had made a mistake in finding only simple pneumoconiosis. (Tr. 38). Plaintiff obviously did not disagree with the Hearing Examiner's decision granting benefits, but thought that if the Hearing Examiner had realized that both physicians had found complicated pneumoconiosis he would have granted benefits from an earlier date, as plaintiff believed the more severe form of pneumoconiosis would have supported an earlier onset date of disability.

On appeal, both the Appeals Council and the plaintiff sought additional "series" readings of the X-rays involved, including the one dated April 13, 1974. The Appeals Council chose to rely on the readings of Dr. Spitz over those of Drs. Pendergrass, Plessinger, and Engelman. The Council's primary basis for this reliance is that Dr. Spitz is a certified "B" reader of chest X-rays while Dr. Engelman is only an "A" reader. While such distinctions are relevant, the Court is of the opinion that this one nega-

tive reading by Dr. Spitz fails to override the overwhelming findings of the other three physicians, two of whom interpreted complicated pneumoconiosis. The Court also notes that the serial rereadings by Drs. Spitz and Engelman consisted of only two X-rays, and thus did not afford a significantly "more comprehensive picture of the evidence than was available to the other physicians of record." (Cf. Tr. 11).

The other negative evidence, including the findings of Dr. Spitz, in light of the entire record, fails to establish a substantial basis for the Secretary's holding that the X-rays fail to show pneumoconiosis. Therefore, plaintiff was entitled to the rebuttable presumption found at 20 C.F.R. § 410.490. The Court must now determine if the record reveals a sufficient basis upon which the Secretary could have rebutted this presumption.

The presumption may be rebutted by demonstration that the plaintiff was either: (a) actually doing his usual coal mine work or comparable and gainful work, or (b) was able to do such work. 20 C.F.R. § 410.490(c). The record is devoid of evidence supporting either of these rebuttal standards.

Accordingly, it is ORDERED that the Secretary's motion for summary judgment be, and the same hereby is, denied. It is further ORDERED that the plaintiff's motion for summary judgment be, and the same hereby is, granted and the Hearing Examiner's decision is hereby reinstated.

Order accordingly.