Andrew ZIELINSKI, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.

No. 77–2325.

United States Court of Appeals, Third Circuit.

Argued June 8, 1978.

Decided June 30, 1978.

---

Frank W. Mulderig, Pittston, Pa., for appellant.

S. John Cottone, U. S. Atty., James W. Walker, Asst. U. S. Atty., Scranton, Pa., Stephanie W. Naidoff, Regional Atty., Fred Marinucci, Asst. Regional Atty., Dept. of HEW, Philadelphia, Pa., for appellee.

Before ADAMS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

### I.

The present appeal had its origin on December 30, 1971, when Andrew Zielinski filed a claim for disability benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.* The claim was denied in March of 1972. After passage of the Black Lung Benefits Act of 1972, the claim was reconsidered in light of the new statutory standards. It was again denied on October 4, 1973.

A *de novo* hearing was thereafter requested by Zielinski, and it was held on April 11, 1974. It consisted of the admission of documents relating to Zielinski's medical history, and of an inquiry into his employment experience. Zielinski stated that, at the time of the hearing, he was employed as a handyman at a trailer park, and prior to that had worked in a maintenance capacity at the Pittston Hospital.[1] His mine-related employment spanned the period from 1948 to the mid–1960's, during which time he worked as a laborer for a number of different coal companies. Zielinski described the conditions of his work in the mines as including extremely dusty air and fumes. He also related that he often had experienced a burning sensation in his lungs precipitated by blasting in the mines.

On October 1, 1974, the administrative law judge decided that the claimant was not entitled to benefits for disability under the Black Lung Benefits Act of 1972. He found that "the preponderance of medical and other evidence" failed to demonstrate "the presence of pneumoconiosis or any totally disabling chronic respiratory or pulmonary impairment, which could be presumed to be pneumoconiosis." In particular, the ALJ recounted that an x-ray taken on February 2, 1972, had been interpreted by one physician as showing the presence of anthracosilicosis. However, the ALJ pointed out that this same x-ray was re-read by two other doctors—in December of 1972 and August of 1973, respectively—who determined that it was "completely negative for pneumoconiosis." Further, an x-ray taken on April 6, 1974, was interpreted by the radiologist as "failing to show any evidence of pulmonary pathology or heart disease."

Hospital records received subsequent to the hearing showed that the claimant had been admitted to the Pittston Hospital for nineteen days in January of 1973; at the time of admission to the hospital, he exhibited edema of the face and hands as well as a markedly enlarged liver. Progress, though very slow, did ensue, and the final diagnosis of his medical condition was of "acute cirrhosis of the liver with jaundice."

The ALJ concluded that there was no basis for saying that claimant suffered from pneumoconiosis—which, had it been demonstrated, would have led to a presumption of total disability under the Act. Rather, the ALJ stressed that the 1972 x-ray had been read on two occasions as showing no presence of pneumoconiosis. He also noted that ventilatory studies of the claimant did not meet the requirements for presumptive disability.[2]

---

1. Other non-mine-related jobs of Zielinski's included work in the late 1960's for the Department of Highways as a laborer, which Zielinski described as having been not "too heavy" in nature, and employment in the 1950's for a company that manufactured submarine nets.

2. With respect to the ventilatory studies, the administrative law judge wrote:

> The interim criteria provide that in order to meet its requirements ventilatory studies must show that a man of 5 feet 9 inches has an FEV (Forced Expiration Volume) 1 equal to or less than 2.4 and MVV (Maximum Voluntary Ventilation) equal to or less than 96. While claimant's MVV of 91 . . . would meet this standard, the FEV 1 readings would not. Since both must be met, it is apparent

Additionally, the ALJ declared that the evidence did not indicate that claimant had a totally disabling and chronic respiratory or pulmonary impairment, whether or not specifically demonstrated to be pneumoconiosis. He wrote:

. . . at the time of hospitalization in January 1973, examination showed no evidence of a severe respiratory impairment of any kind but instead noted . . . the presence of acute cirrhosis of the liver. Although claimant has testified of some increased shortness of breath in recent years, there is no persuasive evidence that he suffers from a chronic respiratory or pulmonary impairment within the meaning of the continuing criteria of the Act.

The decision of the ALJ denying the claim for benefits was approved by the Appeals Council in November of 1974, and thus became the final decision of the Secretary of Health, Education and Welfare. Zielinski brought an action in district court, pursuant to 42 U.S.C. § 405(g), for a review of the Secretary's determination.

Judge Muir, in an order dated June 30, 1976, granted a motion for summary judgment on behalf of the Secretary. The district judge observed, first, that "[t]here is no question that the record contains 'substantial evidence' to support the Secretary's finding" that claimant did not suffer from pneumoconiosis or any totally disabling and chronic respiratory or pulmonary impairment that may be presumed to be pneumoconiosis. *Cf. Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Additionally, the court asserted that to remand the case for further proceedings in light of evidence from examinations made after the Secretary's decision would not be in order, for "there is no evidence that these findings relate to Zielinski's condition on June 30, 1973, the last date on which the Social Security Administration had jurisdiction to consider such evi-

dence . . . ." As of July 1, 1973, jurisdiction over claims for black lung benefits was transferred from the Social Security Administration in the Department of Health, Education and Welfare to the Benefits Review Board in the Department of Labor. *See* 30 U.S.C. § 925.

On October 24, 1977, Zielinski died. A summary of his death certificate [3] indicates that the immediate cause of death was "Laennec's Cirrhosis," and that other significant conditions contributing to death but not related to the immediate cause included "anthracosilicosis." In appellant's brief, as well as at oral argument, it was asserted— without contradiction—that an autopsy confirmed that Zielinski had anthracosilicosis.

II.

The present appeal is from the district court's order of June 30, 1976. Appellant stresses that evidence submitted to the district court in opposition to the Secretary's motion for summary judgment included readings by a radiologist of an x-ray taken after November of 1974, when the decision of the Secretary became final, indicating that Zielinski had "first stage anthracosilicosis," as well as a 1975 report by one Dr. Colarusso that diagnosed Zielinski's ailments as including anthracosilicosis with emphysema. In addition, appellant now proffers a summary of Zielinski's death certificate stating that a significant condition contributing to death "but not related to the immediate cause" was anthracosilicosis.

These items of evidence are claimed to provide a basis for a remand for further factual investigation into Zielinski's medical condition, and are said to "relate back" to his condition prior to July 1, 1973, since he was not exposed to a hazard that would lead to the development of anthracosilicosis after the mid–1960's. The core of appellant's contention is that since pneumoconiosis does not "just suddenly appear," but instead is of a "slow and progressive na-

that claimant does not meet the standards set forth in the interim criteria.

3. The information was copied from the death certificate, so it was explained, "because it is a violation of law to reproduce or duplicate the certificate by photostat or photograph."

ture," it may be assumed that since there was evidence of anthracosilicosis at the time of Zielinski's death and prior to it, such evidence has a bearing on Zielinski's condition before July 1, 1973, when jurisdiction for black lung claims was transferred from H.E.W. to the Department of Labor.

Before us is the narrow issue whether, under the facts of this case, there should be a remand in view of the supplemental evidence submitted by appellant dealing with Zielinski's medical condition. We have ascertained that a remand is necessary.[4]

Under the Black Lung Benefits Act of 1972, which amended the Federal Coal Mine Health and Safety Act of 1969, disability benefits are to be paid to a miner who is shown to be totally disabled by pneumoconiosis or an associated disease of the lungs. Such total disability may be demonstrated by x-rays, a biopsy or an autopsy disclosing the existence of pneumoconiosis, or by ventilatory studies indicating that the claimant is totally disabled by a respiratory disease. Alternatively, if a miner has worked more than fifteen years in the mines, he may be entitled to benefits if it is proven that he suffers from a "totally disabling chronic respiratory ailment" presumed to be pneumoconiosis. *See Gober v. Matthews*, 574 F.2d 772 at 774 (3d Cir., filed March 17, 1978).

In the present case, the administrative law judge ruled that none of the criteria was met, for the x-rays and ventilatory studies did not show the presence of pneumoconiosis or disabling lung disease and there was no other evidence that "would indicate that claimant suffers from such a totally disabling impairment." However, the evidence submitted after the Secretary rendered a final decision does provide a basis for a contrary decision, and thus seems to warrant further factual proceedings relating to claimant's medical condition. This is so since the supplemental evidence includes x-ray readings and, in particular, a summary of a death certificate apparently prepared after an autopsy stating that Zielinski was afflicted with anthracosilicosis.[5]

Pursuant to the regulations under the statute, a finding of the existence of pneumoconiosis may be made by means of an autopsy. *See* 20 C.F.R. § 410.414(a). Even when the existence of pneumoconiosis is not established positively, "if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment . . . it may be presumed, in the absence of evidence to the contrary . . . ." 20 C.F.R. § 410.414(b).

Further, with respect to a miner such as Zielinski, who filed a claim for benefits before July 1, 1973, "such miner will be presumed to be totally disabled due to pneumoconiosis . . . if":

(1) One of the following medical requirements is met:

(i) A chest roentgenogram (x-ray), biopsy, or *autopsy establishes the existence of pneumoconiosis* . . . (emphasis added) [20 C.F.R. § 410.490(b)(1)(i)]

Such a presumption might well arise from the statement in a copy of Zielinski's death certificate that his medical condition at the time of death included anthracosilicosis if, indeed, the certificate was prepared after an autopsy.

The only reason given by the district court for not remanding the case for further factual development in light of the

---

4. Appellant also argues that Zielinski did not knowingly and voluntarily waive his right to counsel at the administrative hearing in this case. In light of our disposition of the appeal, it is unnecessary at this time to determine whether Zielinski knowingly waived his right to counsel at the hearing.

5. We believe that in light of the newly adduced evidence, particularly the summary of the death certificate, which is not merely cumulative of evidence already before the Secretary,

the ALJ's decision might well have been different. *Cf. Roberts v. Weinberger*, 383 F.Supp. 230, 232 (E.D.Tenn.1974) (discussing the burden on a claimant who petitions a district court for a remand: ". . . plaintiff has the burden of adducing new evidence, outside the record that was before the Secretary, that amounts to 'good cause shown' and that convinces the Court that the Hearing Examiner's conclusion would thereby be altered.")

guiding regulations was that "there is no evidence that these findings (in supplemental medical documents before it) relate to Zielinski's condition on June 30, 1973," the date on which the jurisdiction of the Secretary of Health, Education and Welfare over claims for black lung benefits ceased. Nothing was said about the point that pneumoconiosis and related lung diseases progress slowly, and that since the claimant was not exposed to conditions in the mines after the mid–1960's, it might be reasonable to suppose that if Zielinski had such a disease after the Secretary made a final determination, he also may have had it in 1973 prior to the time jurisdiction over such claims was shifted from one executive department to another.[6]

Moreover, decisions cited by the district court in support of its conclusion seem distinguishable from the case at hand. For instance, in *Bush v. Weinberger*, 399 F.Supp. 182, 183 (E.D.Ky.1975), the record showed that the claimant continued his regular, full-time employment in a coal mine until February of 1974, and thus "could not have been totally disabled . . . until at least that date . . ." Here, by contrast, the claimant stopped working in the mines in the mid–1960's, and he subsequently engaged in work that, by his own report, was much less strenuous.

Although it is true that for the Secretary to have jurisdiction over the claim in question, the disability must have existed prior to July 1, 1973, we do not believe that it may be assumed that Zielinski did not suffer from the disease in 1973 when new

evidence unavailable at the time of the hearing has been proffered which, under the regulations, would appear to raise a presumption that he was totally disabled as a result of pneumoconiosis upon his death in 1977. A conclusion adverse to Zielinski's claim would seem to require further factual development in order to be soundly based.

A remand therefore is required to permit the presentation of evidence that would either confirm or deny the presupposition of appellant's claim, namely, that Zielinski suffered from a totally-disabling lung disease that supports a claim to benefits and that the Secretary has jurisdiction to grant such benefits. Of course, the supplemental evidence provided by appellant should be carefully scrutinized.[7]

### III.

Accordingly, the order of the district court will be vacated and the matter remanded to the district court for further remand to the Secretary for proceedings not inconsistent with this opinion.

---

**6.** *See Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977); *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976). Cf. *Wallace v. Mathews*, 412 F.Supp. 233, 234 (W.D.Va.1975) ("[D]ue to the progressive nature of pneumoconiosis, evidence of the existence of the disease developed subsequent to the jurisdictional cut-off date is relevant to a determination as to whether the condition existed prior to July 1, 1973.) *See also Collins v. Weinberger*, 401 F.Supp. 377, 381 (W.D.Va.1975), *vacated on other grounds* 550 F.2d 911 (4th Cir. 1977). ("Since pneumoconiosis does not just suddenly appear, but is of a slow and progressive nature, the court holds that later medical evidence is pertinent to the inquiry, and that therefore, such medical

evidence may relate back to a time prior to July 1, 1973).

**7.** It is also to be noted that recently Congress amended the Federal Coal Mine Health and Safety Act "to improve the black lung benefits program established under such Act . . .", Act of Mar. 1, 1978, Pub.L. No. 95–239. The Senate Report described an aim of the amendments as the removal of "certain eligibility restrictions for the victims of Black Lung disease . . ." S.Rep. No. 183, 95th Cong., 1st Sess. (May 16, 1977). By so amending the Act, Congress evinced a desire to safeguard ailing miners and their widows. That congressional purpose must, of course, be a guiding consideration on remand.