Harry ARMSTRONG

v.

Joseph A. CALIFANO, Jr., Secretary of U. S. Dept. of Health, Education, and Welfare.

No. 77–1712.

United States Court of Appeals, Third Circuit.

Argued April 30, 1979.

Decided June 11, 1979.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Blair A. Griffith, U. S. Atty., Craig McKay, Asst. U. S. Atty., Pittsburgh, Pa., Alan M. Grochal (argued), Atty.,

Dept. of Health, Education and Welfare, Baltimore, Md., for appellant.

J. Scott Leckie, Kenneth J. Yablonski, Margaret Blough (argued), Washington, Pa., for appellee.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal by the Secretary of Health, Education and Welfare (HEW) from an order by the district court to remand this matter to HEW, and directing that the claimant, Harry Armstrong, be granted "black lung" disability benefits under the Federal Coal Mine & Safety Act of 1969, as amended, 30 U.S.C. § 901 et seq. (1970).

Armstrong submitted to HEW an application for disability benefits under the Act on February 13, 1973. A hearing before an administrative law judge resulted in a determination that Armstrong was not entitled to benefits because he had continued to work in the coal mines through September 30, 1973 and thus could not be considered totally disabled as a result of pneumoconiosis on or before June 30, 1973—the date HEW's jurisdiction for payment of benefits terminated.[1] On October 28, 1975, the Appeals Council agreed with this resolution, adopting the administrative law judge's conclusion as the final decision of the Secretary.

Armstrong then filed suit in the district court. There the Secretary's decision was reversed and the matter remanded to HEW with directions to grant disability benefits to the claimant. The district court held that in order to vest jurisdiction with HEW the claimant need not show disability on or before June 30, 1973; rather it is sufficient if he shows that his claim was filed prior to that date.

For the reasons set forth herein, we will vacate the judgment of the district court and remand the case to the district court, with instructions to remand it, in turn, to HEW so that that agency may consider whether Armstrong has established his case in accordance with the guidelines set forth in this opinion.

### A.

From the time of its enactment, the Federal Coal Mine Health & Safety Act contemplated that after a limited period of payments by the federal government, responsibility for the payment of black lung benefits was eventually to be borne by the coal industry . 30 U.S.C. § 901. See S.Rep. No.92–743, 92 Cong. 2d Sess. (1972), 1972 Code Cong. & Admin.News, p. 2305 at 2323, 2324. Congress thus established two separate benefit programs. Under Part B, 30 U.S.C. §§ 921–925, the federal government would pay benefits to disabled miners who filed claims on or before June 30, 1973. The program under Part B was to be administered by HEW. Under Part C, 30 U.S.C. §§ 931–940, responsibility for the payment of benefits with respect to claims filed after December 31, 1973 was placed upon the coal industry, and the Secretary of Labor was to administer the program. Jurisdiction for claims filed between July 1, 1973 and December 31, 1973 was also conferred on the Secretary of Labor, although successful claims would be paid by the federal government.

Clearly, then, June 30, 1973 is a significant transition date for ascertaining the government's liability for the payment of claims through HEW. Although Part B of the Act speaks only of filing a claim by that date, HEW interprets Part B of the Act as also requiring a showing that a claimant be totally disabled due to pneumoconiosis prior to June 30, 1973. We agree with such reading of the statute for the reason that any other interpretation would defeat the

---

1. 30 U.S.C. § 902(f) provides that a miner shall be considered totally disabled only when, as a result of pneumoconiosis, he is unable to engage in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which the miner previously engaged with some regularity and over a substantial period of time.

purpose of the dual administration provisions set forth in the Act. As mentioned, the federal government did not intend to compensate all miners who might ever contract black lung disease. Rather, the intent of Congress was to provide benefits, through HEW, only to those miners already disabled by pneumoconiosis. At the time of the effective date of the legislation, miners who would contract the disease in the future—that is after June 30, 1973—were to process their claims through the Secretary of Labor. The United States government would also pay claims filed after June 30, 1973 and until December 31, 1973—at which time the claims would be paid by the mine owners or the state where the mine was situated under certified workmen's compensation programs. 30 U.S.C. §§ 924(b) and 925(a)(1). See also, Hearings before the Subcommittee on Labor and Public Welfare on S. 2675, S. 2289, H.R. 9212, 92nd Cong. 1st and 2nd Sess. (1971–1972) at 369.

For these reasons we conclude that to vest jurisdiction with HEW the statute requires both the filing of a claim prior to June 30, 1973, and proof that total disability occurred on or before June 30, 1973. Such a result was strongly suggested by our recent opinion in *Zielinski v. Califano*, 580 F.2d 103, 107 (3d Cir. 1978), and all five circuit courts that have considered the issue are in accord with this construction. *Paluso v. Mathews*, 573 F.2d 4 (10th Cir. 1978); *Padavich v. Mathews*, 561 F.2d 142 (8th Cir. 1977); *Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977); *Ingram v. Califano*, 547 F.2d 904 (5th Cir. 1977); *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976).

**2.** Because of dissatisfaction with the administration of the 1969 version of the Federal Coal Mine Health and Safety Act, Congress enacted the Black Lung Benefits Act of 1972 which greatly broadened a claimant's eligibility to receive benefits. The purpose of the Act, as stated in the Senate Report of the Bill, was to establish objective criteria for determining entitlement to benefit payments so that claims could be more expeditiously processed.

. . . the Committee expects the Secretary to adopt such interim evidentiary rules and disability evaluation criteria as will per-

**B.**

Because the district court declared that the filing of a claim prior to June 30, 1973, was sufficient to satisfy the requirements of the Act, 30 U.S.C. §§ 921–925, it did not address the issue whether or not Armstrong was totally disabled as a result of pneumoconiosis on or before that date. It should be noted, however, that there was evidence in the record that could reasonably support a finding that Armstrong was so disabled.

The Interim Criteria promulgated by HEW[2] provide that if a miner submits at the hearing a chest x-ray indicating the existence of pneumoconiosis, he is entitled to a rebuttable presumption of total disability. 20 C.F.R. § 410.490(b). Although Armstrong submitted several x-rays that were interpreted as showing simple pneumoconiosis, they were all taken after the jurisdiction of HEW ceased.[3] But it does not follow from this that medical evidence obtained after June 30, 1973, may not be probative of disabling pneumoconiosis that occurred before that date. On the contrary, courts that have addressed the question have held that evidence accumulated after the jurisdictional cut-off date of June 30, 1973, *must* be considered in determining whether the claimant was totally disabled before that date because of pneumoconiosis. *Zielinski v. Califano, supra. Begley v. Mathews, supra; Talley v. Mathews, supra; Hoffman v. Califano*, 450 F.Supp. 1313 (E.D.Pa.1978). Thus, while claimants must prove they are totally disabled because of pneumoconiosis before June 30, 1973, they are not required to present that proof *by* June 30. Evidence obtained at any time prior to a final decision by the Secretary may be used so long as it relates

mit prompt and vigorous processing of the large backlog of claims consistent with the language and intent of these amendments. S.Rep.No.92–743, 92nd Cong. 2d Sess. (1972), U.S.Code Cong. & Admin.News pp. 2322–23.

**3.** There was one x-ray taken prior to June 30, 1973 and while it was initially interpreted as showing the existence of pneumoconiosis, it was later found to be of insufficient quality to permit reliable classification of the disease. X-rays taken on July 10, 1973, and September 27, 1973 were both interpreted as showing pneumoconiosis.

back in a fashion to prove that the disability existed before July 1, 1973. *Ingram v. Califano, supra.* Moreover, it has been recognized that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time." *Begley, supra* at 1354.

Dr. E. N. Sargent, a certified "B" reader of coal miners' chest x-rays,[4] ascertained on October 22, 1974, that Armstrong was suffering from pneumoconiosis. Dr. Sargent's conclusion, however, was based on a re-reading of an x-ray taken on July 10, 1973, less than two weeks after the cut-off date. This diagnosis is supported by the finding of Dr. Charles Carazola, who, relying on an x-ray taken September 27, 1973, concluded that Armstrong was totally and permanently disabled because of pneumoconiosis before June 30, 1973. Certainly, the hearing examiner may infer that if Armstrong were suffering from pneumoconiosis as early as July 10, 1973, he was similarly affected on June 30, 1973.[5]

■ While the existence of pneumoconiosis raises a presumption of total disability, 20 C.F.R. 410.490(b), this presumption may be rebutted if there is evidence that the claimant continued doing his usual coal mine work. 20 C.F.R. 410.490(c)(1). The Secretary concluded that since Armstrong continued to work in the mines until September 1973, he was not totally disabled before the June 30, 1973 cut-off date.

■ The Secretary's conclusion that continued employment in a coal mine after June 30, 1973, necessarily rebuts the presumption of disability prior to that date was erroneous. A recent case dealing specifically with this issue is *Hanna v. Califano,* 579 F.2d 67 (10th Cir. 1978). There the court held that a claimant who worked in a coal mine could nevertheless be totally disabled. The *Hanna* court stated:

> Continued employment has been deemed not inconsistent with a total disability where the work is characterized by sporadic work, poor performance, or marginal earnings. . . .[6]

There is substantial evidence to sustain a finding that Armstrong's work attendance from June 30, 1973 through September 1973 was sporadic and that his earnings were marginal. In his application for benefits, Armstrong asserted that he was working only intermittently through September of 1973. This statement is supported by the Statement of Earnings Report issued by the Social Security Administration, which indicates that Armstrong received substantially less pay in 1973 than he did during the years between 1962 and 1972.[7]

## C.

We are convinced that a claimant must do more than file a claim before June 30,

---

4. A "B" reader is an x-ray examiner who has attained a certain level of proficiency. "A" readers are, under the regulations, "first readers"; "B" readers are "final" readers. 42 C.F.R. § 37.51.

5. Dr. William F. Schmidt, a noted expert in the field of black lung, testified in the *Begley* case, ". . . that it would be logical to assume that recent positive evidence of pneumoconiosis would mean that the miner has had the disease for at least two years." *Begley v. Mathews, supra* at 1353–54.

6. *Id.* at 69. Congress recently gave this holding added support when it stated in its 1978 amendments to the Act: ". . . if there are changed circumstances of employment indicative of reduced ability to perform his or her usual coal mine work, such miner's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled."

H.R.Rep.No.95–864, 95th Cong. 2d Sess. 2, 30 U.S.C. § 902(f)(B)(ii). As explained in the legislative history accompanying these amendments:

> . . . a claim for benefits under part B may not be denied solely on the basis of employment as a miner if (1) the location of such employment has recently been changed to a mine area having a lower concentration of dust particles; (2) the nature of such employment has been changed so as to involve less rigorous work; or (3) the nature of such employment has been changed to employment which receives substantially less pay.

H.R.Rep.No.95–151, 95th Cong. 2d Sess. (1978), 1978 Code Cong. & Admin. No. 2 at 275.

7. From 1962–1971 Armstrong earned an average of $5,500/year and in 1972 he earned as much as $9,000. In 1973, however, his earnings dropped to just $3,000.

1973 in order to secure Black Lung benefits from HEW. More particularly, he must demonstrate that he was disabled as a result of pneumoconiosis prior to that date. Evidence obtained after June 30, 1973, but probative of a condition existing before June 30, 1973, should be considered in this regard and Armstrong's continued employment in the mines after June 30, 1973, should not itself be determinative. But the finding of fact as to when Armstrong became totally disabled remains the province of the Secretary.

Accordingly, we will vacate the judgment of the district court and remand this case with instructions that it be remanded to HEW in order that a determination may be made in light of the precepts set forth in this opinion.